# Michael S. Wogalter, Ph.D.

## Human Factors Specialist

Exhibit
A

_____

1945 S. Ocean Drive, Unit 1008
Hallandale Beach, FL 33009-6084

_____

Department of Psychology
640 Poe Hall, Campus Box 7650
North Carolina State University
Raleigh, NC 27695-7650

_____

January 19, 2014

Ms. Elizabeth M. Cunningham, Esq.
Rose • Walker, LLP
3500 Maple Avenue, Suite 900
Dallas, TX  75219

Re:   Michael Fisher and Elisa Fisher vs. Bumbo International Trust f/k/a Jonibach Management
        Trust, Bumbo PTY., LTD., and Toys "R" Us- Delaware, Inc. d//a Babies "R" Us;
        In the United States District Court for the Northern District of Florida, Pensacola Division;
        Case No. 3:13-cv-408

Dear Ms. Cunningham:

        At your request, I have prepared a report concerning the warnings and instructions at issue
in above-referenced case.  The content of this letter serves as my report and it gives my opinion on
the matter.  This report is based on my education, training and experience in Human Factors /
Ergonomics (curriculum vita is attached), as well as having reviewed the material listed below:

(1)    An electronic document produced by Bumbo Ltd. (9/29/08) Bates: Bumbo 00001-002266
        in the Stanley matter, which included:
        (a) Product Liability Law 360 article dated Nov. 8, 2007;
        (b) Copies of internal emails within Bumbo, Ltd that documented interactions with the U.S.
            Consumer Product Safety Commission (CPSC);
        (c) Drafts of CPSC press releases regarding the safety of Bumbo products;
        (d) Appendix 3 of document submitted to CPSC by Bumbo lists more than 230 consumer
            complaints about Bumbo baby seats, dating back to June 7, 2004.  It has a spreadsheet
            that lists contact information and dates of responses from Bumbo LTD.;
        (e) International Patent/Trademark application for the Bumbo baby seat, including design
            specifications and certificates of patent from the United States, China, Canada, South
            Africa, European Patent Office, Mexico among others;
        (f) Numerous applications and awards for the Bumbo baby seat from various entities
            called the National Parenting Center Seal of Approval Awards, Mom's Best Award,
            iParenting Media Awards, etc. dating back to 1996;

      (g) Bumbosafety.com website screenshots dated Nov. 28, 2007 that describe new safety materials and warnings;

      (h) Consumer feedback from the Toys "R" Us website includes complaints about the Bumbo baby seat and children falling out of them;

      (i) Documentation of patent infringement dispute with BebePod from Prince Lionheart distributors;

      (j) Testimonial from a South African University hospital pediatrician dated 19 March 2002;

(2)     Depositions of Johan Buitendach, Antoinette Waggonner, & Donald Pillai;

(3)     Exhibits from the Deposition of Marcia Costello;

(4)     Expert Reports of Sandra Metzler and Steven Brown (both from the Stanley vs. Bumbo matter);

(5)     ABC News/ Good Morning America video regarding recall of Bumbo Seat;

(6)     "Bumbo Baby Sitters a Continuing Danger to Infants" article posted on Consumeraffairs.com;

(7)     "Infants in Bumbo Baby Seats Falling from Elevated Surfaces and Suffering Serious Head Injuries" article posted on the CPSC website;

(8)     Bumbo Instruction Leaflet (BUMBO 002363);

(9)     Bumbo Combined Incident Spreadsheet;

(10)    Physical examination of a Bumbo baby seat (product and packaging) involved in the Ferrell vs. Bumbo Ltd. & Babies R Us case;

(11)    YouTube videos showing infants getting out of a Bumbo seat;

(12)    Popular media depictions of Bumbo seat being used on elevated surfaces from television shows such as "Up All Night" and "Tori & Dean Home Sweet Hollywood" and the movie "The Change-Up";

(13)    CPSC recall notice dated August 15, 2012 entitled "Baby seats recalled for repair by Bumbo International due to fall hazard; Consumers should order free repair kit";

(14)    Bumbo website on December 30, 2012 including videos about the installation of the repair kit and other instructions;

(15)    Exponent Report titled "Evaluation of Injury Risk with Tipover of Bumbo Baby Seat" dated October 5, 2011;

(16)    Scientific Expert Analysis Report titled "Review of the CPSC Report Regarding Bumbo seat Rear Stability—SEA Project Number 155404" dated October 5, 2011;

(17)    Three Summaries of Draft Product Safety Assessments prepared by CPSC dated July 16, 2009, June 23, 2011, and August 29, 2011;

(18)    Email communications between CPSC and Bumbo attorney Eric Rubel that contain numerous epidemiological investigation reports documenting post 2007 incidents involving the Bumbo Seat;

(19)    Expert report of John McGrath in the O'Neal v. Bumbo case;

(20)    Plaintiffs' Original Complaint;

(21)    Plaintiffs' First Amended Complaint;

(22)    Materials reflecting correspondence between the CPSC and Bumbo;

(23)    Materials provided with Bumbos post-2012 recall.

Additionally, I have acquired knowledge from previous cases involving the Defendant manufacturer (Bumbo) as well as the retailer, Babies "R" Us.  I have physically examined

exemplar Bumbo seats and exemplar packaging as well as photos from previous cases. Additionally, your firm supplied me with photos, including several before the fall with Mr. Fisher and D.F. (a minor) in their Bumbo seat.  The warnings in this case at issue are the revised 2007 post-recall warnings mandated by the U.S. CPSC.  I have published peer-reviewed warning research starting more than 20 years before D.F.s fall and the manufacture of the subject seat. Using pre-existing research and U.S. standards (e.g., ANSI Z535, 1991 and subsequent years) as comparison anchors, the subject Bumbo seat presents a poor warning.  The main solution has always been design.  The seat restraints required in the recall plus the revised warnings make the product safer.  In the U.S. almost all child seats have restraints.  Parents know and use the restraints regularly.  It is expected.  A product without restraints and which also touts safety through a variety of claims of child retention is expected by reasonable consumers to retain children.   If they retain children then children cannot get out without difficulty or improbably events, by definition.  But clearly children pop out.  That could lead to serious consequences by some children.  Children that pop out may be on the floor (as requested in the warning).  Some will not fracture their skull.  But some could and have.

*Background*

The Fisher's Bumbo Seat was given new in the box to Ms. Elisa Fisher during a baby shower in November, 2008.  She believes she left the box at the restaurant where the baby shower was held after she opened it there.  Mr. Fisher was not at the baby shower and does not, therefore, recall seeing the box for the Bumbo Product or the play tray that was also given to the Fishers at the baby shower.  At around dinnertime on July 13, 2009, D.F. (who was 6 months old) was in his Bumbo located on top of the kitchen table, while being supervised closely by his mother, Ms. Elisa Fisher.  Without warning, D.F. suddenly flipped out of the Bumbo onto the floor.  The event fractured his skull.  Ms. Fisher was directly adjacent to her son when he popped out suddenly.  Mr. Fisher had walked into the kitchen at the same time as the incident and reacting quickly actually caught his son after he had already bounced off the floor.  Both parents witnessed the entire event. I understand that both parents have been deposed in recent days—less than a week of the due date of this report (two business days) so I have not read any of the contents of those depositions in rendering this report.  As I mention at the end of this report, I would enjoy the opportunity to supplement this report, if needed, in areas that are clarified in through subsequent discovery in this case or in the deposition transcripts.

Below is a photo of D.F. in his Bumbo being fed by Mr. Fisher.



The Fishers' Bumbo Seat was a post-2007 recall Bumbo Seat that was reportedly purchased at Babies "R" Us store in Florida. The Bumbo Seat was subject to a recall that was instituted by the U.S. C.P.S.C. on October 25, 2007. Pursuant to that recall, Bumbo Ltd. agreed to provide some new warning and packaging materials for the Bumbo Seat. Specifically, the CPSC required revisions of the box and the on-product warning (described later). The "birthday party photo" was to be removed from packaging "because that photograph could lead consumers to believe that it was safe to use the Bumbo Baby Sitter on elevated surfaces." Also, Bumbo agreed to remove the following statements from the product packaging: "Bumbo is happiest on the floor," "Bumbo can be used on any level surface, and "Bumbo is designed so that baby's own body weight keeps baby in position." I understand that Bumbo and its retailers were required by law to make these CPSC-requested changes.

*Opinion*

You asked me to render an opinion on the adequacy of the post-recall warnings and instructions associated with the Bumbo baby seat. As indicated earlier, I was involved in previous cases involving the Defendant product manufacturer and retailer. In several cases, I wrote reports and authored one or more affidavits involving a similar injury-event in which an infant got out of a Bumbo baby seat and fell off of a raised surface. The Bumbo seats involved in some of those cases (e.g., Stanley, Black, Mix, Ferrell, Hernandez, O'Neal) were all pre-2007 recall seats. I have also worked on other cases that were post 2007 recall (Blythe, Hess and perhaps others). In my earlier analysis, I have discussed that the so-called "CPSC-approved" post- recall warnings (which included additional warning language on the top of the Bumbo box and on the side/front of the Bumbo Seat itself) were poorly designed and unlikely to have much, if any, added effectiveness over the Bumbo Seat's pre-recall warnings.

This is supported by data on (reports of) falls and skull fractures that have occurred since the 2007 recall.  The lack of effectiveness of the post-recall warnings was predictable based on an analysis of the pre-existing warning research literature and standards/guidelines on effective warnings.  My bottom-line opinion is that the post-recall warnings for the subject Bumbo Seat are defective.  The simple character of the product, plus the surprise hazard of a child coming out of the seat suddenly and without warning (which users did not expect but was known by Bumbo) makes the product dangerous.  In fact, it is unreasonably dangerous and defective as sold and/or recalled in 2007 and also when purchased and used by the Fishers.  The bases for this opinion are given below.

*Hazard Analysis and Hazard Control Hierarchy*

Fundamentally, manufacturers should examine and analyze their product to determine whether there are foreseeable hazards associated with its use and misuse.  When hazards are discovered, manufacturers should employ methods to try to control the hazards to reduce personal injury and property damage.

There are procedures to control those hazards.  A well-accepted general hierarchy of hazard control is available to guide the manufacturer's search for ways to reduce foreseeable hazards.  There are several basic, fundamental strategies, methods or approaches that product manufacturers can employ to control hazards and limit the risks.  The first and best strategy for controlling hazards is to design them out—to eliminate them.  For example, there may be some benefit to changing the configuration or weighting of the Bumbo baby seat so as to reduce the number of kids that can get out of the current design.  Examples include: increase the back height, widen the seat base, and/or increase the base's weight.   If these or other changes in design can be accomplished technically, practically and economically so as to reduce the likelihood that infants can get out of them, then these design changes should be employed.  Hazard elimination or reduction by design would be considered the method of greatest efficacy to control hazards (i.e., of babies getting out and potentially falling from an elevated platform) and to prevent injury (e.g., a serious skull fracture).

If the hazard cannot be eliminated feasibly and without ruining the functionality of the product, then a second strategy of hazard control, guarding, should be considered.  With guarding, the hazard is extant but there is some form of barrier to prevent anything bad from happening.  An example of guarding is the use of safety restraints, such as lap belts, to hold the infants in the seat.  This could also be considered design (as in the first hazard-control strategy).  As I know from reviewing materials in previous cases pre-recall (prior to 2007), Bumbo Ltd. received numerous consumer comments suggesting that the manufacturer add a lap belt or safety harness.   These suggestions started several years prior to the manufacture and sale of the Bumbo that was taken into the Fisher household.  In the consumer comments, one person suggested the lack of a safety harness was a "serious flaw" in the product and another stated "it would not take much to insert two holes in the side of the chair and supply a safety strap."  Adding a restraint seems very reasonable from both a technical and economical standpoint.  One of Bumbo's competitor's (Prince Lionheart) manufacturers a similar product, but, unlike the Fisher Bumbo seat, the Prince Lionheart product has a seat belt.  Note, too, that parents and caretakers put infants into other infant seats such as "bouncy" seats, car seats, and high chairs; these and other infant seating products have seatbelts.  The 2012 recall mandated by the CPSC includes a restraint belt (and a

fixture and connectors to aid in its installation).  It is good that this second recall finally adds this important safety device to the Bumbo but a restraint like this should have been incorporated *before* the product was released into the market to consumers.  Recalls are costly and because of a lot of variables, the message and the fix will not reach everyone.  Thus there will be people that will continue to use restraint-less Bumbo seats following the second recall.  According to Bumbo's documents, as of February of 2013, only 628,000 recall kits had been ordered, which accounts for only 15% of the 4,000,000 Bumbo Seats sold in the United States since 2004.  According to testing performed by Exponent (a company hired by Bumbo in conjunction with the 2012 recall), a belt restraint (like the one in 2012 recall) would limit movement to the extent that it would prevent an incident like that involving D.F.

I noted that Bumbo in its correspondence to the US CPSC takes exception to some of CPSC's claims.  Some of this is irrelevant to my analysis (e.g., Bumbo as a bath seat or a car restraint).  However, Bumbo makes great hay out of the apparent belief by the CPSC that adding seat belts would cause more people to use the product on elevated surfaces.  Apparently this potential was a good talking point on why restraints should not be a part of the Bumbo Seat— because, according to Bumbo, the addition of a seatbelt would lead to more frequent, dangerous encounters.  I do not know what credence the CPSC gave to this argument, but at some point the CPSC did not believe it.  The CPSC decided to force a "voluntary" recall, requiring seatbelts on all of the Bumbo Seats, including those already embedded into the U.S. market space.  Bumbo's claim that the addition of a seatbelt will encourage parents to put the Bumbo Seat on the kitchen counter or table might be true to some extent, but the fact of the matter is that people will be putting the Bumbo Seat on elevated surfaces even if it does not have a restraint.  That is the affordance of this product.  The second recall required a retrofit of a restraint.  Before the first recall, people were telling Bumbo they needed a restraint and they just did not do it.

Although I have mentioned a few design and guarding alternatives in this report, I am not offering opinions on the respective deficiencies in my testimony (unless I am specifically asked to do so).  I mention design and guarding strategies because they are important methods for controlling hazards and their consideration is even more critical when it concerns a product that babies will be exposed to.  I am expecting that other experts will opine on design and guarding aspects with respect to the Bumbo.  Primarily, I mention some design and guarding considerations to give some *context* to my main area of expertise, which is the third strategy of hazard control—to warn about the hazard.  Only when the strategies of designing out or guarding against hazards are not feasible and practical should warnings be the choice method of controlling hazards.  Although I have studied warnings for nearly three decades as part of my research (as my CV indicates), I do not believe warnings are the most effective hazard control strategies.  I believe that design and guarding methods are generally better methods of hazard control.  The manufacturer should have considered, tested, and used design and guarding methods such as restraints to reduce hazards and risk of injury while preserving (or enhancing) the utility of the product.  I am rather surprised that seat belts were not provided on Bumbo Seats until they were mandated by the CPSC in 2012, given numerous incidents that have been reported since 2004 (shortly after the product was introduced into the U.S. marketplace).  When the Fisher Bumbo was purchased, there many known incidents, and those incidents prompted the U.S. CPSC to recall the product twice (in 2007 and again in 2012).  The Fisher Bumbo Seat is a post-2007 recall product.  I am in agreement with CPSC attorney Gillice who communicated the following email message to Bumbo's attorneys in

October 2011: "due to the nature of the defect with the seat, namely—it allows infants to fall out, an adequate corrective plan **must** include a design modification to either address infant retention & tip over; and/or discourage the ease of placing on high surfaces; and/or address area of impact (such as an attached play mat—discouraging convenience of counter placement, while also creating a soft surface should infant fall out while on the floor)." Good design/guarding are much better ways to protect against hazards than warning about hazards as was attempted before and after the 2007 recall.

If effective design and guarding are not used to control all residual risk, then warnings are needed.  Not just any warnings can be used because the goal is hazard control (i.e., injury prevention), and so effective, well-designed warnings ought to be used so as to try to accomplish this goal.  My report focuses on the warning aspects of this product.  It concerns the presentation and transmission of information to caretakers using the product with infants so that they attend to the warnings and become informed of the hazard and persuaded to use the product safely.  My opinions are based on well-known, fundamental human factors/ergonomics principles that are based on empirical studies in peer-reviewed publications.

Warnings are used as a kind of "guard" against residual hazards.  Warnings as a hazard control strategy is a "last-resort" or "last line of defense" approach.  It becomes relevant after attempts have been made to design out or guard against the hazard. Warnings "work" in a perceptual, cognitive/behavioral sense because they are used to influence people.  Therefore, if the goal is to protect people, including infants, from harm while using a product, and there are extant hazards that are not effectively controlled by design or guarding, then the warning system ought to be good, i.e., designed to maximize control against residual hazards.

Warning design is important because warnings are the least reliable of the three hazard control strategies.  If the warning system is poorly designed, consumers may not see the warning; they may not read the warning; they may not understand the warning; they may not believe the warning, and the message may not be sufficiently strong to motivate changes in beliefs and energize compliance.  All of these stages of processing may cause a warning to fail (and may sometimes result in severe injury).  I have analyzed the materials on or accompanying the Bumbo baby seat product and have evaluated them relative to factors known to influence effectiveness in the warning literature.

*The Bumbo Baby Sitter Baby Seat Product*

The two major components of the warning system accompanying this product are: (a) labeling directly on the product container box as sold to purchasers, and (b) the product itself. I understand that Bumbo has claimed that there was also a brochure that was inserted into the box.  In this report I describe and discuss these information sources.

Given my examination of Bumbo seats in earlier cases (e.g., Stanley v. Bumbo), the photographs are similar to actual (exemplar models) that I have seen previously. The only difference due to the 2007 recall is that a side warning (described below) has been added.

*On-Product Warning*

I have seen photographs of the Bumbo baby seat in other cases.  Although I am not able to inspect the Fisher's Bumbo Seat (because Michael Fisher threw the Bumbo Seat away immediately following D.F.'s injury), the Fisher's Bumbo Seat would have been similar to the Bumbo Seats in the Blythe and Hess cases, which had both the pre-2007 warning printed on the rear and the post-2007 recall warning on the side of the Bumbo Seat itself.  I will use the photographs of the Blythe's Bumbo Seat for illustrations in this report because the Fisher's Bumbo Seat is not available.

The Bumbo baby seat is one continuous piece of soft rubber-like material and is manufactured in numerous colors and with and without a tray.  As mentioned earlier, there are no seatbelts or safety harnesses.  There is a warning on the backside of the Bumbo Seat (bottom rear):

<div style="text-align:center; color:red;">

**WARNING**

**NEVER USE ON A RAISED SURFACE**
**NEVER USE AS A CAR SEAT OR BATH SEAT**
**DESIGNED FOR FLOOR-LEVEL USE ONLY**
**NEVER LEAVE YOUR BABY UNATTENDED**
**AS THE SEAT IS NOT DESIGNED TO BE**
**TOTALLY RESTRICTIVE AND MAY NOT**
**PREVENT RELEASE OF YOUR BABY IN THE**
**EVENT OF VIGOROUS MOVEMENT**

</div>

I understand the content and appearance of the rear warning-message was unchanged following the 2007 recall. This warning remained the same until the second recall in 2012.

Consistent with the 2007 recall initiated by the CPSC, Bumbo also added a new warning that appears on the left-side of the seat, meaning that when an adult faces an infant seated in the Bumbo, the warning would appear on the left side of the product.  This warning includes a large alert symbol (triangle enclosing an exclamation point) /!\ with the following text:

<div style="text-align:center; color:red;">

**WARNING—Prevent Falls:**
**Never Use on any Elevated Surface**

</div>

The alert symbol is several times bigger than the text adjacent to it.  Below are five photographs: (a) the Blythe Bumbo seat with tray (like the tray that would have been on the Fisher's product); (b) the degraded, illegible on-product warning from the rear of the Blythe Bumbo Seat ; (c) the warning viewed in context on the Bumbo seat's rear; (d) the new warning label (also degraded and illegible) located on the left side of the Blythe Bumbo Seat; (e) and the warning viewed in context on the Bumbo Seat seat's left side.



*(a) Blythe Bumbo seat with tray*



*(b) Degraded, illegible warning from rear of the Blythe seat*



*(c) Rear warning viewed in context*



*(d) Degraded, illegible left side, post-recall warning from Blythe seat*



*(e) Side warning viewed in context.  Also present is a tray attachment*

As mentioned above, the rear warning is the same for all pre-2012 Bumbo Seats as shown in Figure c above.  If there was a warning included on the rear of the Fisher's Bumbo Seat, it would have been the warning depicted in Figure b and discussed on page 8.  Like all of the previous cases that I have reviewed, the print on the Blythe's Bumbo Seat is degraded.  The Fishers' Bumbo would, too, likely be degraded.  This is consistent with the U.S. CPSC product safety assessment report dated June 23, 2011 where is noted that warnings "have rubbed off in half of the available IDIs [incidents] where photos of the product are available."  Thus, the letter is frequently imperfectly formed on these seats.  It is unclear whether this was due to bad printing when originally inked onto the Bumbo Seat or from common exposure conditions afterwards (e.g., exposure to sunlight or cleaning solutions).  Regardless, warnings should last the expected lifespan of the product and there should be an attempt to assure the warnings are clear upon leaving the factory particularly given their importance to safety.  These printing imperfections can affect the warning's legibility, its likelihood of being read and it ability to communicate. It should last the expected lifespan of the product and should be degraded (inasmuch as possible) from foreseeable environmental exposures.

*Box and Information Sheet*

Bumbo has in the past claimed that there might have been a brochure/sheet inside the box. I have seen some information in the present case that the practice started up sometime around 2007, which is about the time of the first recall. John McGrath, in an expert report in a previous case suggested that there was even a revised brochure that was made prior the major revision in the 2012 recall.  Elisa Fisher testified that when she opened the box containing her Bumbo Seat at her baby shower, she did not recall seeing a leaflet inside the box. It is possible that the insert was not contained in the box, or it is possible that it was there, and Ms. Fisher does not recall it being there. Either way, Ms. Fisher never saw or read the leaflet prior to using the Bumbo Seat with D.F.

I will not discuss the possibly-present insert here, since nothing has been provided to me that indicates it was present.  If during this case, Bumbo insists that the leaflet was present in boxes and placed so people will see it (location is important), then I would like to supplement this report at a later time.  In the meantime would like to incorporate by reference the material from my Ferrell vs. Bumbo report and would like to preserve the potential of using and describing the insert and box at trial as well as describing the potential indirect effects it could have on users who may have never seen it directly or just briefly.

Additionally, given that the Fisher's Bumbo Seat was purchased new, it had a box. Ms. Fisher says she did not look much at the box when she took the Bumbo Seat out of the box at the baby shower.  She did not recall what was presented on the box surface or really what the box looked like.  Mr. Fisher similarly testified that he never saw the box for the Bumbo Seat because the box was left at the restaurant where the baby shower occurred; Elisa Fisher did not bring the box home from the baby shower.  In earlier reports, I have discussed the box and how the messages that it provided were misleading.  I incorporate those earlier opinions here.

*Box (Pictures and Warning)*

The Bumbo baby seat box is an unusual shape; it is hexagonal (with a flat top and bottom surface).  The top and side panels are multi-colored.  The printing has both pictures and text.  The text includes claims such as, "Your extra pair of hands," "endorsed by pediatric and orthopedic faculties," and "An International Award winning seat to sit baby in an upright position."  Furthermore, there are five color photographs showing various pictures of babies seated in the Bumbo baby seat.

On one side, safety material and warnings are presented in nine languages signified by an exemplar national flag. While the various flags are colorful, the warning text is printed in black on a pink background.  The warning is printed in nine languages (with different flags).  There is no American flag signifying English; the flag of the United Kingdom signifies English.  The English text is smaller on the box than it is on the product.  Height of text (presented in both upper and lowercase letters) is approximately 1.5 mm.  The British warning text on the box reads as follows:

## [Flag of the UK]   ENGLISH

- As soon as your baby can support his/her head, Bumbo will help your baby sit in an upright position until your baby can sit unsupported.
- Suitable for babies between 3 and 14 months, weighing between 4 and 10 Kg (8.8 and 22 lbs)
- Use should be determined by baby's physical development.
- **Bumbo** is a versatile baby seat that can be use on any flat surface.
- **Bumbo** is designed that the baby's own body weight gently keeps baby in position.
- **Bumbo** is soft, comfortable, lightweight and portable.
- **Bumbo** is made from easy to clean, nontoxic material.
  **Warning, do not use on a raised or uneven surface, as a car seat, in a bath, or in other water.**
  **Bumbo is happiest on the floor.  Do not use until your baby is fully able to support its head.**
  **Depending on the physical development and age of the child, some babies will be able to move out of the Bumbo, so never leave your child unattended.**

A photograph of the English section follows:



The post-2007 recall had different pictures because the CPSC made Bumbo remove a birthday party photo from the boxes following the 2007 recall.  However, even following the 2007 recall, other representations on the box still suggest that the Bumbo Seat was well designed and as a result won numerous awards, some of which are actually displayed on the box.  Although I have not seen the actual box in this case, I would like to temporarily incorporate comments and criticisms that I pointed out in the Ferrell vs. Bumbo case by way of reference.  The main point about the box is that it conveys a sense of appropriateness of using this product in a variety of situations and does not warn in any adequate way that that the Bumbo Seat should only be used on the floor and not on elevated surfaces.  In addition, the information on the box strongly suggests the product is safe to use with babies.  It offers a sense of safety that is not actually met (according to numerous injured babies and two recalls).  The material on the box serves as an anti-warning.  When users think a product is safe they are much less likely to look for or read warnings.

*Warning Defects*

In this section, I discuss reasons why product warnings are important and why the Bumbo baby seat on-product warnings are defective.

Empirical research in the human factors literature on warnings supports the notion that effective warning messages progress through a series of cognitive stages.  Initially, warnings should be salient such that they are prominent and conspicuous, as they need to attract and hold *attention*.  Once noticed, the content of the safety message must be *comprehended* and the consumer must be motivated to comply.  This motivation to comply with the warning message might be affected by *beliefs* regarding product safety.  Thus, effectiveness will be reduced if a

warning fails in the process.  Below, I talk about three points of the process: attention, comprehension, and beliefs.

*Attention.*  A warning must be noticed first and examined. The Fisher Bumbo seat did not contain a well-designed warning on the rear as I have described in previous reports regarding this product.  Given the text size (very small), location (on the back of the seat where caretakers would not be looking if facing the face of their baby), and its poor quality printing--sometimes the lettering appears faded, smeared or ill-formed (as seen in the photographs), it is my opinion that the safety information in the warning message is not salient (also known as conspicuousness or prominence).  Likewise, the additional post-recall (post 2007) warning on the front side of the Bumbo is flawed in terms of message degradation/smearing and tiny lettering.  The small, ill-formed print makes reading difficult even from relatively short distances away.  Both the old and new warnings lack adequate contrast on the blue surface of the Fisher Bumbo would make it less legible even if the lettering was fully formed.  Because the color of the Bumbo is blue, the choice of warning color is important.  The warning print and background should have been made enable high print contrast.

Several principles of effective warnings are violated with regard to salience (prominence, conspicuousness).  One is placement/location of the warnings on the Bumbo baby seat.  Noticeability of the on-product warning is low because the text is located on the backside and side (obscured by tray) of the Bumbo seat.   Parents using the seat with their child would not see the rear warning if they were facing their baby.  Likewise, a parent standing to the right of the seat will not see the side warning.  When the tray attached, the warning can be obscured by the tray during the time the caretaker is looking down to interact with a child.

The print is not likely to draw a person's attention to it.  Even if a person were to see that something is printed on the back or side of the Bumbo baby seat, the warning does not garner much attention because of the warning's positioning on the product, its small type size, its defective print quality and/or fading.  These aspects are important for noticeability, legibility, and effectiveness as documented in the warning research literature (e.g., Wogalter DeJoy, and Laughery, 1999, *Warnings and Risk Communication*. London: Taylor & Francis).  Records produced by Bumbo show that several consumers complained about these issues to Bumbo.  One complainant, for example, stated that the warning "was hard to read because it was very light."

These formatting defects are just some of many warning defects.  There are other problems.  The rear warning-message text is centered justified.  The text should be left justified, not centered (although headings can be centered).  All of the text is in capital (upper case) letters.  Mixed case (a combination of upper and lower case) is generally considered easier to read.  The print height is approximately 3 millimeters.  This is very small relative to the surface area available.  The message text is in continuous prose/paragraph format.  A single chunk of text is considered more difficult to read than separating points in a bulleted list format.  Thus there are numerous violations on what the warning literature says would be most proper to do.  Given that the warning is intended to relay important information to users about the safety of the product with children, it would seem that some effort would have been taken to ensure that the method of presentation makes it easy to grasp (apprehend) the information upon a glance or a slightly longer but short viewing time.

The post recall (post 2007) warning on the front/side has some of the same defects as the pre-recall rear warning.  It has small print, and location difficulties (as it obscured in certain viewing angles with and without the tray).

Without physically examining a post-2007 recall seat or viewing a photo with a ruler adjacent to the warning, I cannot measure the size of the type that appears on the side (post 2007) warning.  Nevertheless from the pictures I can see that the statement "**Never Use on any Elevated Surface**" is unnecessarily small.  Not only should the print be bigger but also bolder (e.g., increased stroke-width).  There is plenty of room.

The combination of failings with respect to known formatting aspects suggest that Bumbo did not do much, if any, investigation into determining proper warnings for its product, pre- or post-2007 recall.   Bumbo knew or should have known that people were not noticing the warning.  It should have been clear from experiences with earlier Bumbo Seats that the print ill-formed at the time of manufacture or was becoming malformed and smeared after use by consumers.  This should have been corrected by Bumbo, but it was not, even years later.

Bumbo should have come with a better method of providing warnings that would last the life of the product.  Instead, Bumbo apparently kept the same printing method, even years later, and then Bumbo also used the same process for the post-recall (post 2007) warning.

Making the warning salient was critical to starting warning processing by the consumer.  As will be mentioned in a subsequent section of this report on Beliefs, consumers are not likely to appreciate the hazards with the Bumbo seat based on its appearances (soft, benign).  It was quite important that Bumbo have a salient warning to attract attention and attempt to correct inappropriate and wrong beliefs about the product.

The text could have been more legible (well-formed).  The print could have been larger, bolder and higher contrast. I have also pointed other formatting defects and placement problems with both the new and old warning that would have influence on salience and the warnings' noticeability so as to make it more likely that attention is captured to warning information.  Although the use of the alert symbol (triangle enclosing an exclamation point) on the post-recall side warning was an apparent attempt to facilitate salience, the placement was such that the tray (such as the tray that was being used by the Fisher's at the time that D.F. fell out of the Bumbo Seat) can obscure the warning, making it difficult or even impossible to see the warning when the tray is in use.  And, as stated earlier, there were numerous printing problems with the Bumbo Seat's warning, which also makes the warning less legible and require effort to read. Warnings that are critical safety should not be illegible and hard to read particularly when the product is practically brand new.  In addition, other kinds of graphics such as pictorial symbols could have been included to increase salience (see also discussion of symbols in the next section on Comprehension).  Clearly salience of the Bumbo Seat's warning was not dramatically enhanced by the addition of the post-recall (post 2007) warning, as it should have been.  And, neither Elisa Fisher nor Michael Fisher saw any of the Bumbo Seat's warnings prior to D.F.'s accident.  This substantiates my analysis about the noticeability of the warning.

*Comprehension.*   Assuming attention is attracted to the warning (which I have said may not occur given the warnings provided), a subsequent stage of processing, comprehension, is also important for warnings to be effective.

The choice of verbiage in the rear on-product warning expresses content in odd ways.  It has information related to the hazard but it seems to skip around a lot to avoid telling what the hazard is.  It never explicitly or directly states the hazard or the consequences: the child could fall and could be badly injured.  It does say, "never use on a raised surface" and "designed for floor-level use only," but it does not say in an explicit manner what common, but dangerous, placements that caretakers may foreseeably use.  Other language like "the seat is not designed to be totally restrictive and may not prevent the release of your baby in the event of vigorous movement" could win a prize for being legalistically obtuse.

Again, the addition of the front side warning mandated by the 2007 recall was meant to redress some of the shortcomings with the rear warning.  I will admit that it is better than the rear warning but it is still deficient in terms of comprehension (understandability).  In other words, the improvements do not rise to a level that would make the warning adequate for its intended purpose of communicating what was necessary to communicate – that children can be seriously injured by falling out of the Bumbo Seat.  The verbiage "Prevent Falls" explicitly identifies the hazard and the text "Never use on an elevated surface" specifies a prohibited action that might lead to injury.  However, the source of a potential fall (i.e., the child kicking or arching backwards suddenly as described in this and previous cases) is not identified.  The warning needed to tell explicitly and directly that the caretaker should not place the Bumbo with their child on tables and counter tops because it is known that babies can suddenly and unexpectedly get out of their Bumbo Seat.  This same scenario had been repeated numerous times and reported to Bumbo in many cases but the warning about this was never specifically given.  Thus, while the warning has some information, it is missing other critical information that is necessary for users to understanding the hazard, and it is therefore, defective.  It never tells the nature of the hazard.

Pictorial symbols can be used not only to capture attention as previously noted (and used in the form of the alert symbol on the side warning), but also can benefit comprehension if designed well.  Based on my research and others' research on pictorials, symbols and icons, I believe a useful, understandable, and attention-getting symbol about the hazard of falling could have been developed.  For example there is a symbol being used for children falling out of window screens in the U.S. market.  Furthermore, there are also symbols having the meaning that caregivers need to keep an eye on small children (e.g., in the context of swimming pool safety).  Thus, the generic alert symbol (likely obscured by tray) would not help consumers such as the Fishers to understand the dangers of the falling hazard.

*Beliefs.*   Beliefs play a role in how safety messages affect behavior.  Beliefs might be shaped by many numerous experiences.  Probably most users of this product would not think that their child could suddenly pop out and fall off of a raised surface – in this case the kitchen table.  It is not open and obvious.  Caretakers were not explicitly warned about this potential as discussed in the above section on comprehension.  In fact other information promulgated by Bumbo suggested that children would be retained.

The lack of risk and safety information was apparently intentional.  In his deposition, Bumbo representative Pillai states that "in marketing, we wouldn't like to remind people of the flaws and faults."  It is somewhat amazing that he admitted this and it is a revealing fact.  However, I will point out another aspect of this admission.  He mentions "reminding" people about "flaws and faults," but that is not actually true, because Bumbo did not really tell people about the flaws and faults at any point--much less remind them about them.  Informed consent about risks is important.  People expect an adequate warning if there is any real chance of injury using a product.  With this product, there were numerous reports of instances in which babies got out of the Bumbo and fell (in Bumbo's own records, on YouTube and according to the CPSC).  A responsible company should not want consumers to buy its product and use it under the misconceptions that could lead to injury.  With this product, it is well established that people believe that they can use the product safely with their baby on a raised surface.  The warnings for this product do not adequately educate and warn caregivers that children may unexpectedly (and without warning) get out of the Bumbo.  Parents need to know that a child placed in a Bumbo seat on a raised surface could fall and be severely injured.  Despite numerous complaints (more than 300 from 2004 to 2011) of babies falling out of Bumbos that Bumbo received, there was no adequate reaction by Bumbo to change the warnings to make the message clearer, except later when the CPSC became involved.  Even after the recall on October 25, 2007, the CPSC reported to Bumbo that epidemiological investigations using the NEISS database revealed that "despite the firm [Bumbo] adding a warning about the fall hazard with use on raised surfaces, the number of injuries has not decreased."

Because this product is likely to be considered benign from its simple appearance, and thus it does not inculcate much consideration of safety, people will not be likely to look for or notice warnings associated with this product.  Given the product's simple, innocuous and noncomplex appearance, it was critical that the warnings be well designed so as to overcome inappropriate beliefs about its proper and safe use.

People sometimes assume that products would not be sold if they were not reasonably safe.  People have the pre-existing belief that the government would not allow a truly unsafe product to be sold and that manufacturers and retailers would not sell the product if it were not safe, particularly when it is a baby product.  This product's promotion/marketing enhances, e.g., on the box, the formation of the erroneous belief that the Bumbo baby seat has been purposefully designed so babies cannot get out.  Some people may believe that there has been appropriate testing to assure that babies are always retained in the seat as they have the reasonable expectation that the safety has been built into the design (e.g., making the base stable and less apt to move from movements of the babies in them).  However, there is no evidence that any testing was done by the Bumbo Ltd. until 2011 (after D.F.'s injury) when Bumbo hired Exponent and SEA, two consulting firms, to determine ways that babies might get out, nor was there any work to remedy the design except for the most recent recall in 2012.  A potentially important fact about this product before the second recall is the lack of seatbelts.  Virtually all children's seating products have seat belts (including high chairs, car seats and a competitor product, the BebePod by Prince Lionheart).  The marketing materials for this product indicate that the design without the seatbelts together with the child's anatomical and maturational characteristics would keep babies in the seat (i.e., without the need for seat belts).  Together this would suggest to caretakers (beliefs) that infants are incapable of getting out.  If it were not the case, consumers are likely to think, that the product would come with seatbelt restraints and/or stronger warnings.  These consumer beliefs are addressed by the CPSC PSA reported dated August 29, 2011 where they concluded that "the firm

[Bumbo] promotes the restraint features of the product while simultaneously downplaying the likelihood of escape from the chair, it is staff's opinion that this may lead caregivers to believe that the product is safe to use as a "babysitter" and "an extra pair of hands" in ways that are not compliant with product warnings."

Most people are likely to think and expect that baby products are relatively safe if they are intended for use in the home.  There is a higher standard of care when hazards and risks concern children.  Several of the complainants who contacted Bumbo and the CPSC to report injuries of their infants falling (or nearly falling) apparently had previously believed that infants could not get out of the seat.

If people believe that the product is relatively safe, there is little motivation to scour the product for warnings.  People may reasonably believe that if it were not safe, it would not be sold (especially at a well-recognized national big box retailer).  Or if there were a safety problem, then they would be told about it by an adequate warning.  Most people do not realize that the CPSC is mostly reactive (i.e., different from the FDA's more pro-active approach).  They act after injuries are reported.  When beliefs about safety for a product are inappropriately high, then it is important for manufacturers to alert consumers by giving prominent, clear warnings.

Caregivers' main focus of attention is on their infant.  The task of baby care is more important (i.e., of greater priority) than reading a poorly-designed printed text that turns out to be a warning.  Other things in the environment, most notably, the baby seated in the Bumbo, are likely to be relatively more prominent and more attractive of attention than the warning messages offered by Bumbo.  Given this context, it is particularly difficult to change existing erroneous safety beliefs that arise from the innocuous appearance of the product, thus it was critical that the warning system for the Bumbo be prominent and well designed.  Better warning designs could feasibly have been used since the introduction of the product into the U.S. marketplace, yet this did not occur (even after the first recall as communicated by the CPSC press release dated 11/22/11 that identified the prevalence of continuing injuries due to falls from elevated surfaces).

Tables and countertops are common, foreseeable places that caregivers would use the product with their baby, yet there is no explicit exclusion of them in the warning.  Instead it says something more obtuse: "Never use on a raised surface. Never use as a car seat or bath seat. Designed for floor-level use only."  The post 2007 (post recall) warning has in tiny print "Never use on an Elevated Surface" but it does not say that babies can come out of it or move the Bumbo unexpectedly, nor does it explicitly tell consumers of the concern with the main location in which caretakers would commonly use it – elevated surfaces.  .  It does not tell critical information to make a complete and adequate warning.

The rear warning says "Never leave baby unattended."  However, if a child suddenly falls out of or from a Bumbo unexpectedly, even a highly attendant caretaker might not react quickly enough in the situation to catch the baby before she hits the floor.  Apparently both parents were nearby when the fall suddenly occurred.  Such events happen so rapidly and unexpectedly that people do not have time to react.  As described in the Complaint and Amended Complaint and during her deposition, Ms. Fisher was sitting directly in front of D.F. the entire time that he was in the Bumbo seat.  She was within arms-reach of D.F.  Mr. Fisher was walking into the kitchen as it happened and could only catch his child after he had already bounced on the hard kitchen floor.  The warnings do

not define the term "unattended."  The fact that an infant can suddenly come out of the Bumbo Seat is particularly important if caretakers believe that their infant cannot get out of the seat, much less that their infant can come out of the seat quickly.  This information was not communicated in the warnings.

The rear warning continues by saying "as the seat is not designed to be totally restrictive and may not prevent release of your baby in the event of vigorous movement."  This, as stated elsewhere, sounds legalistic.  It is not presented in straightforward clear language, such as "babies can suddenly move the Bumbo or unexpectedly arch their back and come out of their seat, and may land on the floor below head first."  Moreover, although the front side warning explicitly identifies the fall hazard, it does not identify the ability of the infant to unexpectedly get out of the chair as the source of the hazard, or state the common anticipated places of use (tables/countertops) that are hazardous.  If the caretaker does not believe their child will ever be able to get out of the Bumbo by themselves or that their child will be able move the Bumbo while seated in it, then they could believe that children may fall because of other circumstances and reasons.  This is the reason why the warning needed additional pertinent information so as to change inappropriate beliefs about proper product use and safety to thereby form more accurate and appropriate beliefs.

*An Assessment of the Warning System using ANSI Standards*

The warnings (both pre- and post-recall) violated basic principles of effective warnings in the human factors literature available prior to the manufacture of this unit.  Numerous articles published in the human factors research literature prior to the manufacture of the baby seat (e.g., see the books by Wogalter (ed.), 2006, *Handbook of Warnings*; Laughery, Wogalter, and Young (eds.), 1994, *Human Factors Perspectives on Warnings:  Selections from Human Factors and Ergonomics Society Annual Meetings 1980 - 1993*.  Santa Monica:  Human Factors and Ergonomics Society, as well as other research that show that warnings can be made more effective by including features (such as conspicuity, explicitness) which benefit the stages of cognitive processing within the receiver.  In both on-product warnings, there should have been prominent-displayed warning message text with explicit information about the hazard, how to avoid the hazard, and the consequences of failing to comply.

As I have discussed in previous reports on the Bumbo, the pre-recall warnings for this product failed to meet the Z535's very basic description of appropriate warnings on a variety of points discussed above.  From the deposition of Donald Pillai, the CPSC recall attempted to boost the effectiveness of the on-product warning by including an alerting symbol (exclamation point within a triangle) with the text "WARNING: Prevent Falls: Never use on any elevated surface" positioned on the front of the seat. The formatting lacks numerous aspects that ANSI Z535 recommends (e.g., colored signal word panel, formatting characteristics and message components).  Unfortunately, it appears that the efforts to comply with the recall were haphazard at best as indicated by Bumbo's representative Pillai "it [the 2007 recall] was like a big joke."

The first recall where the front side warning was added by Bumbo did not go far enough to mitigate the fall hazard to young children.  A second, more substantial recall that included a design modification began in August 15, 2012.  The very fact that a second recall was required establishes

that Bumbo's earlier hazard-control efforts that focused on warning about hazardous use were inadequate.  Unfortunately, the Fishers and their child, D.F., did not have the benefit of the 2012 model or a model that was modified in the second recall in 2012 in which the CPSC required a seatbelt.

Given the severe danger of falls to infants and potential head fractures, it was critical for Bumbo to employ an effective warning system.  The warnings needed to be sufficiently prominent, strong and persuasive to overcome any erroneous beliefs by consumers.  These beliefs and others, then, contribute to perceptions that the product is not dangerous, which in turn, may dissuade people from reading warnings unless that information is given and made salient.  Combined with this product's relatively innocuous appearance and the fact that it can be commonly purchased at a major national retail chain store that sells children's products, people are likely to hold incorrect beliefs that the Bumbo baby seat is a safe product with young infants.

*Conclusions and Other*

If a manufacturer is going to sell a product in which the hazard has not been eliminated through design or physical guarding, then it should have provided effective warning(s) to consumers and users about the risk of using the baby seat on an elevated surface, such as a table or countertop.  In other words, if a manufacturer/retailer is relying on warnings to serve as a method to protect people (including babies through their caregivers) from being injured or killed, it is requisite that the warnings be well designed in both appearance and content.

From my work in other Bumbo cases in which Babies R Us was involved as the retailer, it is clear that the company (and its associated company, Toys R Us) knew about the dangers prior to the purchase of the Bumbo by Mr. Fisher in this case.  I have seen no evidence that the retailer made any suggestions to the manufacturer to improve its warnings or to put on seatbelts.  I believe that the retailer, given its knowledge of young children getting out, falling and being injured, should have played a bigger role instead of doing nearly nothing.  For example, Babies R Us could have put additional warnings on the product and box.   Indeed I believe I remember seeing in earlier cases testimony that the retailer consciously decided to sell Bumbos without the required post-2007 modifications after 2007 at its stores.  That's pretty awful.

The first recall, wherein Bumbo added the front-side warning, did not go far enough to mitigate the fall hazard to young children.  A second, more substantial recall that included a design modification began in August 15, 2012. The very fact that a second recall was required establishes that Bumbo's earlier hazard-control efforts - using poor warnings -were inadequate.  Even the CPSC believed that the post-2007 recall warnings were inadequate, as indicated by the necessity of a second recall.  The warnings were improved in the second recall when the seat restraints were added.  Generally, when good guarding is employed, warnings are less necessary.  Given the severe danger of falls to infants and potential head fractures, it was critical for Bumbo to employ an effective warning system.  The warnings needed to be sufficiently prominent, strong and persuasive to overcome any erroneous beliefs by consumers.  These and other beliefs contribute to perceptions that the product is not dangerous, which in turn, may dissuade people from reading warnings unless that information is given and made salient.  Combined with this product's relatively innocuous appearance and the fact that it can be commonly purchased at a major national

chain store, people are likely to hold incorrect beliefs that the Bumbo baby seat is a safe product for use with young infants. Most infant seats come with seatbelts or harnesses and the fact that this product did not, would suggest to consumers that no restraint is needed based the design of the Bumbo, which supposedly keeps babies retained in the seat. The incorporation of a seatbelt is a fundamental method of hazard control (design/guarding) that was known to be a better method than simply warning about the hazard. It took the force of the CPSC to demand it be implemented in the second recall. I believe CPSC knew from the outset when they got involved with the Bumbo that seatbelts was the better solution in comparison to warning about the hazard, but nevertheless allowed Bumbo to use an added warning. Bumbo was not "volunteering" to incorporate seatbelts at that time. The warning was always a questionable attempted fix, as it was subsequently and predictably found to be relatively ineffective. It is pertinent to note again Mr. Pillai's comment that the post-2007 recall was a joke. It is the responsibility of manufacturer's to make their product safe. CPSC only gets involved when companies exhibit bad behavior.

The foregoing descriptions are the bases for my opinion that the warning system for the subject Bumbo baby seat is defective. The defects rendered the Bumbo Seat unreasonably dangerous such that the defendants in this case should not have made the Bumbo Seats available for sale in the condition in which they were sold. Furthermore, it is my opinion that the pre-2012 recall Bumbo seat is not even safe for use when placed on the floor. Given that it has been demonstrated that babies can get out of the seat, and there is no safety belt restraint, falls can occur even when the Bumbo seat is placed on the floor. I watched a YouTube video where a child got out of the seat placed on the floor and fell directly on his face with the parent (off-screen) immediately asking "are you okay?" And there are at least two documented cases of children falling out of the Bumbo seat while on the floor and receiving skull fractures. The company had notice through consumer complaints years before the Fishers received their Bumbo Seat, but Bumbo did not act until the U.S. CPSC acted to promote a recall in 2007, and even then, Bumbo's actions were not enough to overcome the defective nature of the product. As a direct result of this negligent corporate behavior, T.F. was seriously injured.

Enclosed is a recent copy of my curriculum vitae which includes a list of all publications I have authored during the past ten years, and a list of all of the cases that I have given expert testimony (deposition and trial) during the last four years. At this point in time, I have not determined what exhibits I will use at trial. I anticipate that I will refer to the Bumbo baby seat and its accompanying materials, including an exemplar box as well as subsequent material, such the post-recall safety brochure. I would also like to refer to examples of ANSI Z535-type warnings and other kinds of demonstrative materials that pre-date this product's manufacture.

I hope that I have opportunity to add to or modify the opinions expressed in this report should additional information warrant it.

Sincerely,

Michael S. Wogalter, Ph.D.